Filed 9/19/14  In re Lauren C. CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re LAUREN C. et al, a Person Coming Under the Juvenile Court Law. | B255024 (Los Angeles County Super. Ct. No. CK39918) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. L.R., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Marilyn Kading Martinez, Commissioner.  Affirmed.

M. Elizabeth Handy, under appointment by the Court of Appeal, for Defendant and Appellant.

Richard D. Weiss, Acting County Counsel, Dawyn R. Harrison, Assistant County Counsel, Kim Nemoy, Principal Deputy County Counsel for Plaintiff and Respondent.

## INTRODUCTION

L.R., mother of Lauren C. and Joshua C., appeals from the juvenile court's order terminating her reunification services after six months. We affirm.

## BACKGROUND

In December 2012, the Los Angeles County Department of Children and Family Services (Department) received a referral alleging general neglect based on substance abuse by mother and father, Manuel C. During the investigation, mother and father admitted smoking marijuana recreationally and outside of the house. In mid-November, mother had enrolled in an outpatient drug and alcohol treatment program at Now & Forever Foundation. About a week later, father also enrolled in an outpatient drug and alcohol program at Now & Forever Foundation. The Department received seven more referrals alleging parental neglect through May 2013.

On June 7, 2013, mother and the Department entered into an agreement pursuant to which mother would receive various services, including drug treatment, and would submit to on-demand drug testing. The same day, mother tested positive for amphetamine and methamphetamine. On June 14, 2013, mother enrolled in an outpatient drug treatment program at New Beginning Treatment Center. Mother claimed that she had been "clean" for six years before relapsing.

On July 10, 2013, the Department filed a Welfare and Institutions Code section 300[1] petition alleging that mother's three youngest children[2]—20-month-old Lauren, seven-month-old Joshua, and five-year-old Isaac M.[3]—came within the jurisdiction of the juvenile court because mother had an 18-year history of substance abuse and was a

---

[1] All statutory citations are to the Welfare and Institutions Code unless otherwise noted.

[2] Mother had five other children. She lost her parental rights or was denied reunification services to four of those children and one child was deceased.

[3] Mother's appeal does not concern Isaac.

current abuser of amphetamine and methamphetamine, mother had a drug-related criminal history, and two of the children's siblings had received permanent placement services due to mother's substance abuse. The petition further alleged that father had a history of substance abuse and was a current abuser of marijuana, had been under the influence of illicit drugs while caring for and supervising the children, had a recent arrest for driving under the influence, and had a drug-related criminal history.

On July 10, 2013, the juvenile court found a prima facie case for detaining the children, declared them dependents under section 300, removed them from mother's and father's custody, and granted mother and father reunification services. On August 21, 2013, the juvenile court ordered mother to participate in a drug treatment program with aftercare, weekly random or on-demand drug testing, a 12-step program, and individual counseling. Mother also was to verify that she had a sober and stable lifestyle.

The six-month review hearing began on February 19, 2014. The Department's Status Review Report stated that mother was unemployed and homeless. She was staying with her sister or friends. Mother reported that she was moving into a rented room, but did not provide the Department with the address. During the reunification period, mother had enrolled in at least three different drug treatment programs, but had not completed any of them. She also had not completed any other court-ordered case plan activity. Mother missed several weekly random drug tests. Mother repeatedly promised to provide the Department with paperwork verifying her participation in "meetings or parenting classes," but failed to do so.

At the time of the hearing, mother was enrolled in an outpatient drug treatment program at Now & Forever Foundation. The social worker had not received any current progress report concerning mother's current participation, despite mother's repeated promises to provide such documentation. Mother claimed that she had attended El Proyecto del Barrio and New Beginning Treatment Center, but the social worker had not received paperwork verifying mother's participation. In October 2013, mother had enrolled in a 90-day inpatient program at Acton Rehab. She left the program after one

3

weekend, reporting that she could not stay in an environment in which everyone was using drugs.

Mother submitted two clean drugs tests in October 2013, one in November 2013, and three in December 2013, but missed all other drugs tests—at least 14 missed drug tests. Mother had not provided written proof of participation in a 12-step program. She reported that she was attending Narcotics Anonymous meetings, but had not provided written proof to the social worker. Mother reportedly was receiving job search and resume assistance, and was being mentored through a church.

Lauren and Joshua resided together in a foster home. They appeared to have a strong, positive, and nurturing bond with their caregivers. Mother was scheduled to visit with Lauren and Joshua once a week for two hours, to meet with Isaac once a week for two hours, and to meet with all three children twice a month for three hours. Mother missed 17 out of 49 scheduled visits.[4] Although mother's interactions at visits with her children generally were appropriate, during one visit she repeatedly commented to Lauren that she was "chunky and so fat." Lauren and Joshua were excited and happy to see mother during visits and mother actively interacted with them. Lauren said that she missed mother.

Mother said that she would do anything to get her children back. She said she was "trying really hard to do everything that she has to, but it is very difficult." The social worker conducted an assessment of the risk of abuse or neglect if Lauren and Joshua were returned to their parents' care and determined that the risk was "very high." The Department recommended that mother's reunification services be terminated because her current compliance was minimal, her unresolved substance abuse history was lengthy, she had a 13-year history with the child welfare system, and she had failed to reunify with three of her other children who eventually were adopted. Although mother showed in the past that she was able to comply with court orders in the short term, thus allowing

---

**4** The Status Review Report does not specify which visits mother missed—i.e., whether she missed visits with Lauren and Joshua, with Isaac, or with all three children.

her previously to reunify with Isaac, she had failed to show substantial compliance as of the six-month review hearing.

At the February 19, 2014, six-month review hearing, the juvenile court ordered the Department to provide further reunification services for father. As to mother, the juvenile court continued the six-month review hearing to March 12, 2014, due to lack of notice. Mother failed to appear for the continued six-month review hearing. After finding that mother had received proper notice, the juvenile court terminated mother's reunification services as to all three of her children. It stated that mother was not in substantial compliance with the court's orders and had not verified substantial progress because she did not have housing and she had entered several drug programs and had not completed any of them. The juvenile court set the case for a 12-month review hearing for Lauren and Joshua, and set a selection and implementation of a permanent plan hearing for Isaac.

## DISCUSSION

Mother contends that insufficient evidence supports the juvenile court's order terminating her reunification services after six months. Substantial evidence supports the juvenile court's order.

### I. Standard of Review

We review findings and orders made pursuant to section 366.21 for substantial evidence. (*James B. v. Superior Court* (1995) 35 Cal.App.4th 1014, 1020.) "The issue of sufficiency of the evidence in dependency cases is governed by the same rules that apply to other appeals. If there is substantial evidence to support the findings of the juvenile court, we uphold those findings. [Citation.] We do not evaluate the credibility of witnesses, reweigh the evidence, or resolve evidentiary conflicts. Rather, we draw all reasonable inferences in support of the findings, consider the record most favorably to the juvenile court's order, and affirm the order if supported by substantial evidence even if other evidence supports a contrary conclusion. [Citation.] The appellant has the burden

5

of showing the finding or order is not supported by substantial evidence.  [Citation.]” (*In re L.Y.L.* (2002) 101 Cal.App.4th 942, 947.)

**II.     Application of Relevant Principles**

When a juvenile court removes a child who is under three years of age from parental custody, it must order the Department to provide the family with reunification services not to exceed six months from the date of the disposition hearing.  (§ 361.5, subd. (a)(1)(B).)  Under section 366.21, subdivision (e), the juvenile court must return the child to parental custody “unless the court finds, by a preponderance of the evidence, that the return of the child to his or her parent or legal guardian would create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child.”  “The failure of the parent or legal guardian to participate regularly and make substantive progress in court-ordered treatment programs shall be prima facie evidence that return would be detrimental.”  (*Ibid.*)  For a child under three years of age on the date of the initial removal, the juvenile court may schedule within 120 days a selection and implementation hearing pursuant to section 366.26 if it “finds by clear and convincing evidence that the parent failed to participate regularly and make substantive progress in a court-ordered treatment plan.”  If, however, the juvenile court finds that “there is a substantial probability that the child, who was under three years of age on the date of initial removal . . . may be returned to his or her parent or legal guardian within six months or that reasonable services have not been provided, the court shall continue the case to the 12-month permanency hearing.”  (§ 366.21, subd. (e).)

Substantial evidence supports the juvenile court’s order terminating mother’s reunification services because mother did not participate regularly and make substantive progress in the juvenile court’s ordered reunification services.  (§ 366.21, subd. (e).)  That evidence includes the following:  mother did not complete any part of her reunification services and did not submit to the Department documentation concerning her ongoing participation in such services; mother had a long-term, unresolved drug abuse problem; in the six-month reunification period, mother had enrolled in, but failed

6

to complete three drug treatment programs and had missed a number of drug tests; and mother also was unemployed and homeless and thus had not demonstrated a "stable lifestyle."

Mother argues that the evidence supported a finding that there was a substantial probability that Lauren and Joshua might be returned to her custody within six months. Even if there was evidence that might have supported such a finding, mother's argument is unavailing. As stated above, we will affirm an order that is "supported by substantial evidence even if other evidence supports a contrary conclusion." (*In re L.Y.L., supra,* 101 Cal.App.4th at p. 947.) Here, as explained above, substantial evidence supports the juvenile court's order termination mother's reunification services.

Mother contends that because the juvenile court continued father's reunification services, it was in Lauren's and Joshua's best interest also to continue mother's reunification services because doing so would not delay implementation of a permanent plan for Lauren and Joshua. Section 366.21, subdivision (e), however, "provides no express limitation on the court's authority to terminate reunification services to a parent at a six-month review hearing where the minor is under the age of three and the parent has received or been offered six months of services, regardless of whether the court sets a section 366.26 hearing or offers further services for the other parent." (*In re Jesse W.* (2007) 157 Cal.App.4th 49, 65.) Due to evidence that mother failed to comply with her reunification services, there is substantial evidence to support the juvenile court's termination of mother's reunification services, regardless of whether it continued reunification services for father.

**DISPOSITION**

The order is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


MOSK, J.


We concur:


TURNER, P. J.


KRIEGLER, J.